Case 2:21-cv-00102 Document 16 Filed on 10/05/21 in TXSD Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
October 05, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AUSTIN D. BIRDOW, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 2:21-CV-00102 |
| JOSE CHAPA, *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Austin D. Birdow, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is a Motion to Dismiss filed by Defendants Jose Chapa, Dr. Isaac Kwarteng, and The University of Texas Medical Branch (UTMB). (D.E. 15). For the reasons set forth below, it is respectfully recommended that this motion be **GRANTED in part** and **DENIED in part**. It is respectfully recommended further that, pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2), Plaintiff's deliberate indifference claim against **Dr. Isaac Kwarteng** in his individual capacity be **RETAINED**.

### I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.   BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the McConnell Unit in Beeville, Texas.  Plaintiff's allegations in this case arise in connection with his current housing assignment.

On May 21, 2021, Plaintiff filed this prisoner civil rights action against: (1) Registered Nurse (RN) Chapa in his individual and official capacity; (2) Dr. Kwarteng, the McConnell Unit's Medical Director, in his individual capacity only; and (3) UTMB.  (D.E. 1, p. 3).  Plaintiff claims that Defendants acted with deliberate indifference to his serious medical needs when he sought treatment for an injury to his tongue.  Plaintiff further seeks to assert a state law claim of negligence against Dr. Kwarteng.  (D.E. 1, p. 3).  Plaintiff seeks monetary relief.

Plaintiff alleges the following in his complaint.  On July 29, 2019, Plaintiff bit his tongue while playing basketball.  He was taken to the infirmary.  Plaintiff was first seen by Nurse Christy Franks who then referred Plaintiff to RN Chapa.  RN Chapa came to where Plaintiff was sitting and gave him a cursory glance.  He recommended that Plaintiff gargle with salt and warm water.  (D.E. 1, p. 4).

Plaintiff requested a straw because he was in pain and having difficulty swallowing.  RN Chapa refused Plaintiff's request.  RN Chapa also refused Plaintiff's request for gauze

to help stop the bleeding. Nurse Franks reminded RN Chapa that Plaintiff needed something to mitigate the pain. RN Chapa responded by disappearing to the back of the infirmary. Before Plaintiff left the infirmary, an officer took pictures of Plaintiff's tongue.

On July 30, 2019 Plaintiff submitted an informal complaint to Senior Practice Manager Tanya Lawson to complain about his medical care. The next day, Plaintiff submitted a sick call request. Plaintiff was seen by Dr. Kwarteng on August 1, 2019 after enduring three days of constant pain and having no food. Plaintiff lost seven pounds during these three days. Plaintiff informed Dr. Kwarteng that he was in pain and that such pain intensified when he tried to eat. Dr. Kwarteng only prescribed Plaintiff with 600 milligrams of Ibuprofen and did not physically examine Plaintiff.

On August 5, 2019, Plaintiff submitted another sick call request to the infirmary as he was still in pain. On August 6, 2019, Plaintiff was seen by Medical Provider Goyel who diagnosed Plaintiff with having a "disease called Thrush" on Plaintiff's tongue as well as "cauliflower-like growth present at the tip of [Plaintiff's] tongue." (D.E. 1-1, p. 1). Medical Provider Goyel referred Plaintiff to the hospital to see an Ear, Nose, and Throat (ENT) specialist. On September 3, 2009, Plaintiff saw ENT specialist Dr. Ohlstein, who performed an excision and stitch of Plaintiff's tongue that day.

On June 8, 2021, the undersigned order service of Plaintiff's complaint on Defendants. (D.E. 10). On July 23, 2021, Defendants filed a Motion to Dismiss pursuant

to Federal Rules of Procedure 12(b)(1) and 12(b)(6). (D.E. 15). Plaintiff has not filed a response. The motion, therefore, is deemed unopposed.[1]

### III.  LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist. *Id*.

---

[1] According to the Local Rules for the Southern District of Texas, "[f]ailure to respond will be taken as a representation of no opposition." LR 7.4. As Plaintiff is proceeding *pro* se, the undersigned nevertheless will consider whether dismissal of any or all of Plaintiff's claims is appropriate.

Rule12(b)(6), in turn, provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554-55. When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

IV.   **DISCUSSION**

    A.   **Eleventh Amendment Immunity Official Capacity**

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for

monetary damages against a state official in his or her official capacity is one against the state itself and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver*, 276 F.3d at 742 (recognizing that the Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

Defendants contend that, to the extent Plaintiff sues RN Chapa and Dr. Kwarteng in their official capacities for money damages, those claims are barred by the Eleventh Amendment. (D.E. 15, pp. 2-3). The undersigned agrees but notes that Plaintiff sues only RN Chapa in his official capacity. (D.E. 1, p. 3). Accordingly, it is respectfully recommended that Defendants' Motion to Dismiss (D.E. 15) be granted on this issue and that Plaintiff's claims for money damages against RN Chapa in his official capacity be dismissed with prejudice.

Defendants further contend that UTMB is immune from § 1983 liability. (D.E. 15, pp. 3-4). The Eleventh Amendment bars suit against state entities such as UTMB regardless of whether money damages or injunctive relief is sought under § 1983. *See Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); *Clay v. Texas Women's University*, 728 F.2d 714, 715-16 (5th Cir. 1984). Accordingly, it is respectfully recommended that Defendants' Motion to Dismiss (D.E. 15) be granted on this issue and that Plaintiff's § 1983 claims against UTMB be dismissed with prejudice.

    **B.**    **State Law Negligence Claim**

Defendants contend in their Motion to Dismiss that Dr. Kwarteng, as a UTMB employee, is immune from any state law claim of negligence under the Texas Tort Claims Act (TTCA). (D.E. 15, pp. 4-5).

Section 101.106(f) of the Texas Tort Claims Act (TTCA) provides that if a suit is filed against an employee of a government unit based upon conduct within the general scope of that employee's employment, and if it could have been brought against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. Tex. Civ. Prac. & Rem. Code § 101.106(f); *Franka v. Velasquez,* 332 S.W.3d 367, 369-85 (Tex. 2011). In *Franka,* the Texas Supreme Court explained that § 101.106(f) was intended to "foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment." *Franka,* 332 S.W.3d at 381.

"Immunity under the TTCA extends to negligence or medical malpractice claims against a defendant in his or her individual and official capacity for the actions taken as a full-time health care provider employed by UTMB." *Taylor v. Poffinbarger*, No. H-20-2428, 2021 WL 356831, at *11 n. 96 (S.D. Tex. Feb. 2, 2021) (citing *Franka*, 332 S.W.3d at 381-83). *See also Denson v. TDCJ-ID*, No. 12-02-00099-CV, 2003 WL 21254862, at *16 (Tex. App.-Tyler May 30, 2003, no pet.) (commenting that "[t]he TTCA does not provide recovery [of damages] against individuals employed by the [State of Texas]," which includes health care providers employed by UTMB) (citation omitted). Because Dr. Kwarteng is entitled to immunity under the TTCA regarding Plaintiff's state law claim of

negligence, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 15) on this issue be granted and that Plaintiff's state law claim of negligence against Dr. Kwarteng be dismissed.

### C. Plaintiff's Deliberate Indifference Claims

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) *Farmer*, 511 U.S. at 834. In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Estelle*, 429 U.S. at 104-05. A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*" <u>Easter v. Powell</u>, <u>467 F.3d 459, 464</u> (5th Cir. 2006) (emphasis in original).

The deliberate indifference standard "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.

### *(1) RN Chapa*

Defendants contend that Plaintiff has failed to state an Eighth Amendment Claim against RN Chapa because the basis of his claim centers only on his disagreement with the medical treatment received from RN Chapa for his tongue injury. (D.E. 15, pp. 7-9).

Plaintiff's alleges that: (1) Plaintiff was seen at the McConnell Unit's infirmary on July 29, 2019, after he bit his tongue while playing basketball; (2) RN Chapa provided Plaintiff with cursory treatment, only recommending that Plaintiff gargle with salt and warm water; (3) RN Chapa refused Plaintiff's requests for a straw despite the fact he was in pain and having difficulty swallowing; (4) RN Chapa refused Plaintiff's request for gauze to stop the bleeding; and (5) RN Chapa ignored another nurse's reminder that Plaintiff needed something to mitigate the pain and apparently did not refer Plaintiff immediately to see a medical provider; (6) Plaintiff was diagnosed one week later with having the disease Thrush on his tongue as well as having a fungus-like growth on the tip of his tongue; (7) Plaintiff was in continuous pain during the one-week period; and (7) Plaintiff's tongue condition required a referral to the hospital where he was treated by an ENT specialist.

Plaintiff's allegations, accepted as true for purposes of a Rule 12(b)(6) motion, suggest that RN Chapa may have provided Plaintiff with such minimal treatment to indicate a wanton disregard for Plaintiff's serious medical needs involving his tongue. Accordingly, because Plaintiff has stated a plausible deliberate indifference claim against RN Chapa, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 15) be denied on this issue.

Defendants further contend that RN Chapa is entitled to qualified immunity which shields him from constitutional liability in his individual capacity. (D.E. 15, pp. 9-10). The doctrine of qualified immunity affords protection against individual liability for civil

damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). First, he must claim that the defendant committed a constitutional violation under current law. *Id.* Second, he must claim that the defendant's action was objectively reasonable in light of the law that was clearly established at the time of the complained-of actions. *Id.*

Plaintiff, as discussed above, has stated a plausible deliberate indifference claim against RN Chapa. Based on the allegations set forth in Plaintiff's original complaint, the undersigned cannot conclude at this time that RN Chapa acted objectively reasonable in light of clearly established law. Because RN Chapa is entitled to qualified immunity at this time, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 15) be denied on the issue of qualified immunity as to RN Chapa.[2]

---

[2] Any decision to deny the Motion to Dismiss on the issue of qualified immunity is without prejudice to the individual defendants reasserting same through an appropriate motion for summary judgment. Indeed, the discovery process may reveal additional facts that entitle these defendants to qualified immunity on Plaintiff's claims. *See Zollicoffer v. Livingston*, 169 F. Supp. 3d 687, 698 (S.D. Tex. 2016).

### *(2) Dr. Kwarteng*

In their Motion to Dismiss, Defendants raise no argument that Plaintiff failed to state a deliberate indifference claim against Dr. Kwarteng. Even though he does not make a specific reference in the complaint to an Eighth Amendment claim against Dr. Kwarteng, the undersigned liberally construes Plaintiff's complaint as raising such a claim against this defendant.

The undersigned, therefore, shall evaluate Plaintiff's allegations to determine whether he has stated an Eighth Amendment claim against Dr. Kwarteng. 28 U.S.C. § 1915A(b)(1). *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). "Claims that fall under Section 1915A(b)(1) are analyzed 'using the same standard applied under Federal Rule of Civil Procedure 12(b)(6).'" *Schwarzer v. Lumpkin*, No. 6:18-cv-00029, 2021 WL 4438143, at *3 (S.D. Tex. Sep. 28, 2021(quoting *Mendoza-Tarango v. Flores*, 982 F.3d 395, 399 (5th Cir. 2020)).

Plaintiff alleges that: (1) on August 1, 2019, Plaintiff was seen by Dr. Kwarteng for his tongue injury after enduring three days of constant pain and having no food; (2) Plaintiff lost seven pounds during these three days; (3) Plaintiff informed Dr. Kwarteng that he was in pain and that such pain intensified when he tried to eat; and (4) despite Plaintiff's complaints of pain and suffering, Dr. Kwarteng only prescribed Plaintiff with 600 milligrams of Ibuprofen and did not physically examine Plaintiff; and (5) another medical

provider diagnosed Plaintiff five days later with two having two medical conditions arising from his tongue injury requiring a visit with a ENT specialist.  Plaintiff's allegations, accepted as true, suggest that Dr. Kwarteng may have provided Plaintiff with such minimal treatment as a medical provider to indicate a wanton disregard for Plaintiff's serious medical needs involving his tongue.  Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim against Dr. Kwarteng in his individual capacity be retained.

## V. RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss (D.E. 15) be **GRANTED in part** and **DENIED in part**.

The undersigned respectfully recommends that the Motion to Dismiss be **GRANTED** to the extent that: (1) Plaintiff's claims for money damages against **RN Chapa** in his official capacity be **DISMISSED** as barred by the Eleventh Amendment; and (2) Plaintiff's state law claim of negligence against **Dr. Kwarteng** in his individual capacity be **DISMISSED** because Dr. Kwarteng is entitled to immunity under the TTCA.  Because Plaintiff has stated an Eighth Amendment claim of deliberate indifference against RN Chapa and he is not entitled to qualified immunity at this time, it is respectfully recommended further that Defendants' Motion to Dismiss be **DENIED** with respect to Plaintiff's deliberate indifference claim against **RN Chapa** in his individual capacity.

Lastly, it is respectfully recommended further that, pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2), Plaintiff's deliberate indifference claim against **Dr. Kwarteng** in his individual capacity be **RETAINED**.

Respectfully submitted on October 5, 2021.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).